Lloyd Winawer (SBN 157823)
Blake E. Williams (SBN 233158)
GOODWIN PROCTER LLP
101 California Street
San Francisco, California 94111
Tel.: 415.733.6000
Fax: 415.677.9041
lwinawer@goodwinprocter.com
bwilliams@goodwinprocter.com

Attorneys for Plaintiff Vincent Kamyar Vaghar

UNITED STATES DISTRICT COURT OF CALIFORNIA

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| VINCENT KAMYAR VAGHAR,<br><br>Plaintiff,<br><br>v.<br><br>DAVID J. KILLIAN; ANTHONY M. MAROTTA; and ROSA COURT, LLC, a New Jersey limited liability company,<br><br>Defendants. | Case No. C 07 4083 MMC<br><br>**PLAINTIFF VINCENT KAMYAR VAGHAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date:        November 16, 2007<br>Time:        9:00 a.m.<br>Courtroom: 7<br>Judge:       Honorable Maxine M. Chesney |

1

## TABLE OF CONTENTS

2

Page

3

4   I.      INTRODUCTION ................................................................................................... 1

5   II.     BACKGROUND ..................................................................................................... 1

6   III.    ARGUMENT .......................................................................................................... 3

7           A.     Killian and Marotta Explicitly Consented to Jurisdiction in California...................... 3

8           B.     Even Absent Consent, Defendants are Subject to Personal Jurisdiction in
                   California in this Matter. ........................................................................................ 7
9
                   1.     Defendants Purposefully Availed Themselves of the Benefits and
10                         Protections of California .......................................................................... 8

11                 2.     This Action Arises out of Defendants' California-Related Acts................... 11

12                 3.     The Exercise of Jurisdiction Over Defendants is Reasonable..................... 11

13          C.     Venue is Proper in This Court................................................................................ 13

14          D.     This Action Should Not be Transferred to Pennsylvania........................................ 14

15          E.     Conclusion............................................................................................................ 16

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### <u>TABLE OF AUTHORITIES</u>

3

FEDERAL CASES

4

*Bates v. C&S Adjusters, Inc.,*
    980 F.2d 865 (2nd Cir. 1992)........................................................13-14

5

6

*Brand v. Menlove Dodge,*
    796 F.2d 1070 (9th Cir.1986)........................................................8, 10

7

8

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)........................................................Passim

9

10

*Calder v. Jones,*
    465 U.S. 783 (1984)........................................................8

11

12

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991)........................................................6

13

*Continental Oil Co. v. Atwood & Morrill Co.,*
    265 F.Supp. 692 (D.Mont.1967)........................................................15

14

15

*Data Disc, Inc. v. Sys. Tech. Assoc.,*
    557 F.2d 1280 (9th Cir.1977)........................................................8

16

*First of Mich. Corp. v. Bramlet,*
    141 F.3d 260 (6th Cir. 1998)........................................................13

17

18

*Hanson v. Denckla,*
    357 U.S. 235 (1958)........................................................7

19

20

*Jenkins Brick Co. v Bremer,*
    321 F.3d 1366 (11th Cir. 2003)........................................................13

21

22

*Lewis v. ACB Business Services, Inc.,*
    135 F.3d 389 (6th Cir. 1998)........................................................14

23

*M/S/ Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972)........................................................3-4, 6

24

25

*McGee v. International Life Ins. Co.,*
    355 U.S. 220 (1957)........................................................12

26

*Mizokami Bros. of Arizona v. Mobay Chemical Corp.,*
    660 F.2d 712 (8th Cir.1981)........................................................15

27

28

ii

*National Equip. Rental, Ltd. V. Szukhent,*
  375 U.S. 311 (1964) ........................................................................ 3-4

*Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,*
  51 F.3d 1383 (8th Cir.1995) .............................................................. 10

*Pacific Atlantic Trading Co. v. M/V Main Express,*
  758 F.2d 1325 (9th Cir.1985) ............................................................ 11

*Reed Elsevier, Inc. v. Innovator Corp.*
  105 F.Supp.2d 816 (S.D. OH. 2000) ................................................. 15

*Rio Props., Inc. v. Rio Int'l Interlink,*
  284 F.3d 1007 (9th Cir. 2002) ............................................................. 3

*Ruggieri v. General Well Service, Inc.,*
  535 F.Supp. 525 (D.C.Col.1982) .......................................................... 7

*Sher v. Johnson,*
  911 F.2d 1357 (9th Cir. 1990) ........................................................... 12

*St. Jude Med., Inc. v. Lifecare Int'l, Inc.,*
  250 F.3d 587 (8th Cir. 2001) ............................................................. 10

*Sunward Electronics, Inc. v. McDonald,*
  362 F.3d 17 (2nd Cir. 2004) ................................................................ 9

*Terra Int'l, Inc. v. Mississippi Chem. Corp.,*
  119 F.3d 688 (8th Cir. 1997) ............................................................. 15

*Wessels, Arnold & Henderson v. National Med. Waste, Inc.,*
  65 F.3d 1427 (8th Cir. 1995) ........................................................... 9-10

*World-Wide Volkswagen Corp. v Woodson,*
  444 U.S. 286 (1980) ..................................................................... 8, 10

*Zenger-Miller, Inc. v. Training Team, GmbH,*
  757 F.Supp. 1062 (N.D. Cal. 1991) ...................................................... 7


STATE CASES

*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.,*
  69 Cal.2d 33 (1968) ......................................................................... 5

*Vons Cos. v. Seabest Foods,*
  14 Cal.4th 434 (1996) ....................................................................... 7

iii

FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

20 U.S.C. § 1404(a) ........................................................................................... 14-15

28 U.S.C. § 1391(a) and (b) .................................................................................... 13

28 U.S.C. § 1406(a) .............................................................................................. 1, 3

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 1, 3

Fed. R. Civ. P. 12(b)(3) ........................................................................................ 1, 3


STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Cal. Code Civ. Proc. § 410.10 ................................................................................... 7

## I.   INTRODUCTION

Plaintiff Vincent Kamyar Vaghar ("Vaghar") hereby submits this memorandum in opposition to defendants David J. Killian ("Killian"), Anthony M. Marotta ("Marotta"), and Rosa Court, LLC's ("Rosa Court") motion to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue.  Defendants' motion to dismiss must be denied as defendants utterly fail to mention that they agreed to be subject to jurisdiction in California.  Indeed, in the Agreement for Settlement of Debt (the "Agreement") at the heart of this matter, Defendants purposefully availed themselves of the protections of the laws of the State of California.  In so doing, Defendants brought themselves within the jurisdiction of the State of California. Moreover, even absent Defendants' consent to jurisdiction in California, Defendants have sufficient purposeful minimum contacts with California for purposes of this suit and venue is proper.  Defendants' motion to dismiss should be denied.

## II.    BACKGROUND

This action arises out of a $325,000 loan (the "Loan") made by Vaghar to Killian and Marotta, who are managing members of Rosa Court, in connection with the construction of a condominium development project in Philadelphia, Pennsylvania (the "Rosa Court Development").  As defendants admit in their Motion, the Loan was originally memorialized by a written promissory note in favor of Vaghar along with other documents (the "Note").  Killian and Marotta failed to satisfy their financial obligations to Vaghar by May 31, 2006, as provided by the Note.  *See* Declaration of Vincent Kamyar Vaghar ("Vaghar Decl.") at ¶ 12.  In lieu of taking legal action against Killian and Marotta, Vaghar negotiated with Killian and Marotta throughout the summer of 2006 in an attempt to reach an acceptable agreement to satisfy the debt.  *See* Vaghar Decl. at ¶ 12-13.

The parties were able to agree upon the terms of a new arrangement, and in late October 2006 Killian, Marotta and Vaghar entered into an Agreement for Settlement of Debt (the "Agreement"), which was effective as of October 15, 2006.  Rather than providing for monetary

repayment of Vaghar's Loan by Killian and Marotta, the Agreement contemplated that Killian and Marotta would cause the delivery of one condominium unit in the Rosa Court Development to Vaghar, free and clear of any liens and indebtedness, no later than January 31, 2007. Killian and Marotta again failed to satisfy their obligation to Vaghar. *See* Vaghar Decl. at ¶ 13. Given Killian and Marotta's continuing failure to satisfy their obligations to Vaghar under the Note and the Agreement, Vaghar brought this action seeking specific performance and damages from Defendants.

Vaghar is an investor and real estate developer domiciled in California. *See* Vaghar Decl. ¶ 2. In or about May of 2006 Vaghar moved to Menlo Park, California, where he continues to reside. *See* Vaghar Decl. ¶ 3. Priot to that time, from 1997 to May 2006, Vaghar resided in Los Angeles, California. *See* Vaghar Decl. ¶ 3. As alleged in the Second Amended Complaint (the "Complaint") and admitted by defendants in their Motion and accompanying declarations, Killian is domiciled in Pennsylvania, Marotta is domiciled in New Jersey, and Rosa Court is a limited liability company formed under the laws of New Jersey with its principal place of business in Philadelphia, Pennsylvania.

Vaghar's association with Killian and Marotta began in April of 2002 when Vaghar met Killian at a social event in Los Angeles, California. *See* Vaghar Decl. ¶ 4-5. During this visit Killian and Vaghar discussed the possibility of working together on various real estate development projects. *Id.* Vaghar was later introduced to Marotta through Killian. *Id.* From 2002 through 2006 Killian visited California on numerous occasions. *Id.* Killian's visits were primarily social, however Killian and Vaghar habitually discussed potential real estate investments in Philadelphia, as well as California, Florida and Nevada and explored the possibility of working with one another. *Id.* While Vaghar did make several trips to Philadelphia pursuant to his real estate investments with Killian and Marotta, the vast majority of the contact and dealings between Killian, Marotta and Vaghar relating to Rosa Court took place either telephonically or over email while Vaghar was in California. *See generally* Vaghar Decl. Indeed, Killian and Marotta reached out to Vaghar over the telephone on several occasions to solicit investments, including in the Rosa

2

1    Court Development, while Vaghar was in California. *See* Vaghar Decl. at ¶ 6-7, 10.

2                        **III.    ARGUMENT**

3                Defendants' motion to dismiss for lack of personal jurisdiction and improper venue

4    is brought under Federal Rule of Civil Procedure 12(b)(2), Federal Rule of Civil Procedure

5    12(b)(3) and 28 U.S.C. § 1406(a).  Under Rule 12(b)(2), "[a]lthough the defendant is the moving

6    party on a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists."

7    *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002).  Where the Court

8    receives only written submissions, "the plaintiff need ***only make a prima facie showing*** of

9    jurisdiction to avoid the defendant's motion to dismiss." *Id.* (emphasis added).  In determining

10   whether plaintiff has met this burden, "uncontroverted allegations in [plaintiff's] complaint must

11   be taken as true, and conflicts between the facts contained in the parties' affidavits must be

12   resolved in [plaintiff's] favor." *Id.*

13               Here, the written submissions make clear that, by entering into the Agreement,

14   defendants consented to jurisdiction of the California courts.  Moreover, even if the Court were to

15   find otherwise, defendants nevertheless have sufficient "minimal" contacts with California to

16   confer the Court's jurisdiction over them.  With respect to venue, a substantial part of the events or

17   omissions on which the claim is based occurred in the Northern District, and thus, venue is

18   similarly proper.  For these reasons, the defendants' motion must fail.

19               **A.     Killian and Marotta Explicitly Consented to Jurisdiction in California.**

20               It is black letter law that personal jurisdiction requirements can be waived via

21   forum selection clauses that are "freely negotiated" and are not "unreasonable and unjust." *See*

22   *M/S/ Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).  A contract may contain a forum

23   selection clause that subjects the parties to the jurisdiction of the courts of a particular state. *See*

24   *National Equip. Rental, Ltd. V. Szukhent,* 375 U.S. 311, 316 (1964) ("Parties to a contract may

25   agree in advance to submit to the jurisdiction of a given court.").  Forum selection clauses are

26   presumptively valid and they should be honored "absent some compelling and countervailing

27   reason." *Bremen*, 407 U.S. at 12.  The party challenging the clause bears a "heavy burden of

28

1  proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the

2  clause was invalid for such reasons as fraud or over-reaching." *Id.* at 15.

3          Here, the defendants clearly waived personal jurisdiction requirements by executing the

4  Agreement, a fact boldly overlooked in Defendants' Motion.  Clause 3.6 of the Agreement

5  explicitly states as follows:

6                  This Agreement has been negotiated and entered into in the State of

7                  California, and is governed by, construed and enforced in

8                  accordance with the internal laws of the State of California, applied

9                  to contracts made in California by California domiciliaries to be

10                 wholly performed in California, except to the extent the laws of

11                 Pennsylvania are required with respect to the conveyance of the Unit

12                 (or the Substitute Unit) to Kamyar [Vaghar].

13 *See* Agreement, attached to Vaghar Decl. as Exhibit C.

14         Language such as this has been construed as reflecting a party's consent to jurisdiction.

15 The *Szukhent* matter is particularly instructive in this regard.  There, the Supreme Court

16 considered language very similar to the language of Clause 3.6, providing that the "rights and

17 liabilities of the parties [shall be determined] in accordance with the laws of the state of New

18 York." *Szukhent,* 375 U.S. at 315-316.  The Court found that, by executing the contract, the

19 parties had bound themselves to submit to personal jurisdiction in New York.  *Id.*

20         Like the language in *Szukhent,* the language in the Agreement is a clear submission to the

21 jurisdiction of the California courts.  The parties in this action unequivocally waived any objection

22 to the jurisdiction of California in agreeing that California law would govern, construe and *enforce*

23 judgment in any dispute arising out of the Agreement short of the actual conveyance of the

24 condominium unit at Rosa Court to Vaghar.

25         Examining the extrinsic evidence in this matter relating to the parties' course of dealing

26 and negotiation reinforces the fact that Killian and Marotta intended to be subject to jurisdiction in

27 California.  While Clause 3.8 of the Agreement provides that the Agreement is a fully integrated

28

1  contract, and while under federal law extrinsic evidence is inadmissible to interpret or vary the

2  terms of an unambiguous, full, and integrated written contract, examining such evidence is *proper*

3  under California law.  *See Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.,* 69

4  Cal.2d 33, 38-39 (1968) (despite a lack of ambiguity, the words of a contract alone can never

5  impart its meaning and thus the meaning of any contract "can only be found by interpretation in

6  light of all the circumstances that reveal the sense in which the writer used the words") *Id.*

7  (citations omitted); *Trident Center,* 847 F.2d at 569 (confirming that *Pacific Gas* decision

8  eliminated the power of parties in California to draft a contract immune to parol evidence).

9          Here, an examination of the extrinsic evidence reveals that, prior to execution of

10  the Agreement, the parties specifically discussed and agreed that the Agreement would be

11  governed by California law and heard in a court venued in California.  *See* Vaghar Decl. at ¶ 14.

12  Indeed, in an email from Marotta to Vaghar (Killian was copied on the email) dated October 19,

13  2006,[1] Marotta expressly states that he and Killian agree to California with "regards to legal

14  process."  *See* Vaghar Decl. at ¶ 14; Marotta's October 19, 2006 email, attached to Vaghar Decl.

15  as Exhibit D.  Such a statement by Marotta clearly and unequivocally reinforces the notion that

16  Clause 3.6 of the Agreement was intended to function as a forum selection clause subjecting

17  Killian and Marotta to jurisdiction in California.

18          Additionally, the Note executed by Killian, Marotta and Vaghar, which first

19  memorialized Vaghar's loan to defendants and their payment obligations, clearly evidences a

20  consent to jurisdiction in California.  The Note provided that it was to be "governed by and

21  construed pursuant to the laws and by the courts of the State of California," and that any disputes

22  arising under the guarantee were to be "settled by arbitration in the County of Los Angeles, State

23  of California, in accordance with the rules then obtained from the American Arbitration

24  Association."  *See* Vaghar Decl. at ¶ 8; Note, attached to Vaghar Decl. as Exhibit A.  Before

25  entering into the Note, Vaghar specifically discussed with Killian and Marotta that any dispute

26  would be governed by California law and arbitrated in California, and Killian and Marotta

27

28

---

[1]    The Agreement, while effective as of October 15, 2006, was not signed until in late October, 2006.  *See* Vaghar Decl. at ¶ 13.

5

1  consented to this agreement.  *See* Vaghar Decl. at ¶ 9.

2        As noted above, the party challenging the clause bears a "heavy burden of proof"

3  and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was

4  invalid for such reasons as fraud or over-reaching." *Bremen*, 407 U.S.. at 15.  Because their

5  Motion challenging personal jurisdiction in California completely ignores Clause 3.6 of the

6  Agreement, defendants have utterly failed to meet their "heavy burden," offering no facts or

7  evidence supporting a determination that enforcement of the forum selection clause in this matter

8  would be unreasonable or that the clause is invalid.  The course of dealing and negotiations

9  between the parties does not evidence fraud in any manner on the part of Vaghar, and Defendants

10  have not shown that litigating their dispute in California will be gravely inconvenient or unfair.

11  *See, generally, Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).  Indeed, the parties

12  are currently arbitrating an unrelated dispute over another real estate development project in

13  Philadelphia known as the 12th and Jackson St. project.  *See* Vaghar Decl. at ¶ 10.  In that dispute,

14  Vaghar loaned Killian and Marotta $40,000 that was secured by a personal guarantee signed by all

15  parties in favor of Vaghar.  *Id.*  The language in this guarantee was nearly identical to that of the

16  Note, including language which brought any dispute under the jurisdiction of California.  *Id.*

17  Killian and Marotta failed to meet their obligations under the 12th and Jackson St. guarantee.

18  Arbitration over the 12th and Jackson St. matter is currently pending before the American

19  Arbitration Association (AAA# 72 148 898 07 JENF).  *Id.*  Killian and Marotta have not disputed

20  that the arbitration has been properly brought in California.  *Id.*

21        It is clear that the Agreement entered into in this matter contemplated that any

22  disputes be litigated in California and governed by California law.  It is also clear that California is

23  not an unreasonable venue for defendants to litigate their claims, as they have offered no evidence

24  to support this contention and are presently litigating another dispute against Vaghar in California.

25  Defendants' motion should be dismissed.

26

27

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. C 07 4083 MMC

1  **B. Even Absent Consent, Defendants are Subject to Personal Jurisdiction in**

2  **California in this Matter.**

3        Because defendants' consent to jurisdiction through a contractual agreement is so

4  unequivocal, the Court's inquiry regarding personal jurisdiction should end here.  *Ruggieri v.*

5  *General Well Service, Inc.,* 535 F.Supp. 525, 528-29 (D.C.Col.1982) ("If a defendant consents to

6  personal jurisdiction in a particular forum, then the court need not inquire further."); *see also*

7  *Zenger-Miller, Inc. v. Training Team, GmbH,* 757 F.Supp. 1062, 1069 (N.D. Cal. 1991) (once a

8  party has consented to the jurisdiction of a particular state, the absence of "minimum contacts"

9  does not bar personal jurisdiction).  However, even if the Court were to determine that the

10 Agreement does *not* evidence defendants' submission to jurisdiction, an examination of

11 defendants' contacts with the State of California will provide the same result.

12        The California long-arm statute authorizes the exercise of personal jurisdiction over

13 a defendant "on any basis not inconsistent with the Constitution of this state or of the United

14 States."  Cal. Code Civ. Proc. § 410.10.  To satisfy constitutional due process requirements,

15 Vaghar has the burden of establishing that (1)  the defendants have sufficient purposeful

16 "minimum contacts" with California and (2) the exercise of jurisdiction comports with traditional

17 notions of fair play and substantial justice.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474

18 (1985), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Hanson v.*

19 *Denckla,* 357 U.S. 235, 253 (1958); *Vons Cos. v. Seabest Foods,* 14 Cal.4th 434, 444 (1996).

20        The Ninth Circuit has established a three-factor test for determining when a state

21 may constitutionally exercise specific jurisdiction over a defendant.  Jurisdiction is appropriate

22 where: "(1) the nonresident defendant must do some act or consummate some transaction with the

23 forum state or perform some act by which it purposefully avails itself of the privilege of

24 conducting activities in the forum state, thereby invoking the benefits and protections of its laws;

25 (2) the claim must arise out of or result from the defendant's forum-related activity; and/or(3) the

26 exercise of jurisdiction must be reasonable."  *Ochoa,* 287 F.3d at 1188-1189.  The 9th Circuit

27 formerly required a plaintiff to demonstrate each of these three factors to establish specific

28

7

1    jurisdiction. *See Data Disc, Inc. v. Sys. Tech. Assoc.,* 557 F.2d 1280, 1287 (9th Cir.1977).

2    However, in light of subsequent Supreme Court precedent, the 9th Circuit has adopted a more

3    "flexible approach." *Brand v. Menlove Dodge,* 796 F.2d 1070, 1074 (9th Cir.1986). In particular,

4    within the rubric of "purposeful availment" the Ninth Circuit has allowed the exercise of

5    jurisdiction over a defendant whose only "contact" with the forum state is the "purposeful

6    direction" of a foreign act having effect in the forum state. *See, e.g. Calder v. Jones,* 465 U.S.

7    783, 789 (1984). Moreover, jurisdiction may be exercised with a ***lesser showing of minimum***

8    ***contact*** than would otherwise be required if considerations of reasonableness dictate. *Burger King*

9    *Corp. v. Rudzewicz,* 471 U.S. 462, 105 (1985). Finally, there is a ***presumption of reasonableness***

10    upon a showing that the defendant purposefully directed his activities at forum residents which the

11    defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would

12    be unreasonable. *Id.*

13         The actions taken by defendants in this matter indisputably allow this Court to

14    exercise jurisdiction in accordance with the due process requirements of the Constitution and the

15    long arm statute of California. Vaghar's claims against the defendants meet each factor in the

16    Ninth Circuit's test for determining when a state may constitutionally exercise specific jurisdiction

17    over a defendant.

18         **1.**      **Defendants Purposefully Availed Themselves of the Benefits and**

19             **Protections of California**

20         The purposeful availment factor assures that a nonresident will be aware that it is

21    subject to suit in California. *World-Wide Volkswagen Corp. v Woodson*, 444 U.S. 286, 297

22    (1980). It protects against a nonresident being haled into court in a foreign forum solely as a result

23    of "random, fortuitous or attenuated" contacts to which it had no control. *Burger King Corp. v.*

24    *Rudzewicz*, 471 U.S. 462, 476 (1985). Foreseeability is crucial in a purposeful availment analysis.

25    The defendant must be able to foresee that its "conduct and connection with the forum State are

26    such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*,

27    444 U.S. at 297.

28

1    It is hard to imagine that defendants could not reasonably anticipate being "hailed

2  into court" in California in relation to this matter.  Defendants signed both the Note and the

3  Agreement, each of which contemplates that California law shall govern any dispute, and each of

4  which states that all disputes shall be arbitrated or enforced in California.  *See* Note, attached to

5  Vaghar Decl. as Exhibit A; Agreement, attached to Vaghar Decl. as Exhibit C.  Indeed, Clause 3.6

6  of the Agreement contains a recital that the Agreement has been negotiated and entered into in

7  California.  Even if, for purposes of argument, the Note or the Agreement did not contain binding

8  forum selection clauses (which they do), both agreements clearly contemplate that California law

9  will govern any dispute arising thereunder.[2]  A choice of law provision is a significant factor in

10  personal jurisdiction analysis "because the parties, by so choosing, invoke the benefits and

11  protections of [forum] law."  *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 23 (2nd Cir.

12  2004); *Wessels, Arnold & Henderson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1434 (8th Cir.

13  1995) (Choice of law provision is an important factor in determining whether the defendant

14  "purposefully availed" itself of the benefits and protections of local law).

15    Additionally, the allegations in the Complaint and in the Declaration of Vincent

16  Kamyar Vaghar demonstrate that the defendants pursued an ongoing business relationship with

17  Vaghar, and as a result of this relationship defendants undertook various acts in or directed at

18  California, ultimately consummating in the Agreement.  It was Killian who, in or about May 2005,

19  placed a telephone call to Vaghar in Los Angeles for purposes of soliciting Vaghar's investment in

20  Rosa Court.  *See* Vaghar Decl. at ¶ 7.  As a result of Killian reaching out to Vaghar in California,

21  Vaghar traveled to Philadelphia to inspect the site of the Rosa Court Development.  *See* Vaghar

22  Decl. at ¶ 7.  Following Vaghar's investment in Rosa Court and following defendants' failure to

23  satisfy their obligations to Vaghar under the Note, defendants kept in continual contact with

24  Vaghar in California via telephone and email.  *See* Vaghar Decl. at ¶ 13.  Killian frequently visited

25

26  [2]    As noted supra, the Agreement provides that California law governs the operation of the
     Agreement, except to the extent the laws of Pennsylvania "are required with respect to the
27    conveyance of the Unit…"  Thus, California law governs any actual *dispute* between the
     parties under the Agreement, while Pennsylvania law *only* governs the actual transfer of the
28    condominium unit.

9

1    California, and during these visits he and Vaghar habitually discussed business ventures, including

2    the Rosa Court development. *See* Vaghar Decl. at ¶ 5, 12. Moreover, Killian and Marotta reached

3    out to Vaghar in California via telephone calls on several other occasions to solicit Vaghar's

4    investment on other real estate development projects. *See* Vaghar Decl. at ¶ 6, 10.

5            The case of *St. Jude Med., Inc. v. Lifecare Int'l, Inc.,* 250 F.3d 587 (8th Cir. 2001),

6    is analogous to the present dispute. In *St. Jude,* the defendants called and wrote to plaintiff in

7    Minnesota frequently in furtherance of negotiations over a contract which contemplated an

8    ongoing relationship between the parties. *St. Jude Med., Inc.,* 250 F.3d at 592. In holding that

9    defendants were subject to the jurisdiction of Minnesota, the Court found that the communications

10   between the parties were not random, fortuitous or attenuated contacts, but rather a purposeful

11   connection that should have put the defendants on notice that they could be haled into court in

12   Minnesota. *Id.; see also World-Wide Volkswagen,* 444 U.S. at 297; *Wessels,* 65 F.3d at 1431

13   (personal jurisdiction established where nonresident aggressively pursued a business relationship

14   with a Minnesota resident through numerous mail and telephone contacts); *Northrup King Co. v.*

15   *Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995)

16   (two trips to Minnesota, substantial purchases and extensive written communication showed that

17   contacts were not random).

18           Defendants' contacts with Vaghar in California can hardly be called attenuated or

19   random. The parties kept in constant contact and had an established business relationship. Every

20   contract entered into between Vaghar and defendants contained choice of law and forum selection

21   clauses in favor of California. The Agreement specifically provides that it was "negotiated and

22   entered into in the State of California." *See* Agreement, Clause 3.6, attached to Vaghar Decl. as

23   Exhibit C. Defendants' business relationship with Vaghar easily provides the necessary minimum

24   contacts with California and purposeful availment of the laws and protections of California to

25   satisfy the first factor in the 9th Circuit's test for determining when a state may constitutionally

26   exercise specific jurisdiction over a defendant.

27

28

1    **2.    This Action Arises out of Defendants' California-Related Acts**

2          This action relates directly to the above described acts which were undertaken in

3    California.  Vaghar's claims arise out of the business relationship described between Vaghar and

4    the defendants, memorialized in the Agreement.  Thus, given that defendants' California-related

5    activities form the basis for this action, Vaghar has satisfied the second factor in the 9th Circuit's

6    test for determining when a state may constitutionally exercise specific jurisdiction over a

7    defendant.

8    **3.    The Exercise of Jurisdiction Over Defendants is Reasonable**

9          A finding of minimum contacts "may be considered in light of other factors to

10   determine whether the assertion of personal jurisdiction would comport with 'fair play and

11   substantial justice.'"  *Burger King,* 105 S.Ct. at 2184 (quoting *International Shoe Co. v.*

12   *Washington,* 326 U.S. at 320 (1945)).  These other factors include: 1) the burdens on the

13   defendant, 2) the forum State's interest in adjudicating the dispute, 3) the plaintiff's interest in

14   obtaining convenient and effective relief, 4) the interstate judicial system's interest in obtaining

15   convenient and effective relief, and 5) the shared interest of the several states in furthering

16   fundamental substantive social policies. *Burger King,* 105 S.Ct. at 2184 (quoting *World-Wide*

17   *Volkswagon Corp.,* 444 U.S. at 292).

18         The 9th Circuit has considered reasonableness a separate factor in determining

19   limited personal jurisdiction.  *Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325,*

20   *1329 (9th Cir.1985).*  However, in *Burger King* the Supreme Court stated that presence of the

21   reasonableness factors listed above may balance out an otherwise insufficient showing of

22   minimum contact: "These considerations sometimes serve to establish the reasonableness of

23   jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."

24   *Burger King,* 105 S.Ct. at 2184.  Moreover, after a showing that the defendant has purposefully

25   directed his activities at forum residents, the *defendant* "must present a compelling case that the

26   presence of some other considerations would render jurisdiction unreasonable." *Id.* at 2185.

27   Simply alleging that litigation in California is inconvenient, or that Pennsylvania would be a more

28

11

1    convenient forum, is not enough for defendants to meet this standard.  Defendants must show that

2    litigation in California would be so gravely difficult that it puts defendants at a severe

3    disadvantage in comparison to Vaghar.  *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990)

4    (Requiring the nonresident to defend locally is not constitutionally unreasonable "in this era of fax

5    machines and discount air travel").

6            It is clear from the discussion above that defendants established minimum contacts

7    with California through their activity of soliciting and maintaining an ongoing business

8    relationship with Vaghar—a California resident—and entering into the Agreement with Vaghar in

9    California, to be enforced by and governed by the laws of California.  Defendants must present a

10   compelling case that jurisdiction would be unreasonable.  *Burger King,* 105 S.Ct. at 2185.

11   Defendants have not met their burden.

12           As discussed, defendants cannot claim that they did not purposefully maintain

13   minimum contacts with California and purposefully avail themselves of the benefits and

14   protections of California law.  Additionally, the State of California has a strong interest in

15   providing an effective means of redress for its residents when a contract such as the Agreement is

16   breached.  *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223 (1957) (holding that

17   California has a "manifest interest in providing effective means of redress for its residents" against

18   a non-resident insurance company where the beneficiary of the insurance policy was a California

19   resident); *Haisten v. Grass Valley Medical Reimbursement Fund, LTD,* 784 F.2nd 1392, 1401 (9th

20   Cir. 1986).

21           Furthermore, there is little risk of a conflict with a foreign state's sovereignty as the

22   parties expressly designated California law as controlling over any dispute arising out of the

23   Agreement.  The Agreement provides that only the actual transfer of the Rosa Court condominium

24   unit to Vaghar will be subject to Pennsylvania law.  *See* Clause 3.6 of the Agreement, attached to

25   Vaghar Decl. as Exhibit C.  Thus, solely California law governs the substance of this dispute.

26           Where, as here, defendants deliberately engage in significant activities within the

27   forum state, "it is presumptively not unreasonable to require him to submit to the burdens of

28

                                                    12

1  litigation in that forum as well." *Burger King*, 471 U.S. at 477.

2            **C.**     **Venue is Proper in This Court**

3            In diversity cases such as this action, venue is proper in a judicial district where all

4  defendants reside or in a judicial district where a substantial part of the events or omissions on

5  which the claim is based occurred.  28 U.S.C. § 1391(a) and (b).  In this action, it is uncontested

6  that none of the defendants reside in the Northern District of California.  However, Vaghar has

7  resided in the Menlo Park, California since sometime in May 2006.  *See* Vaghar Decl. at ¶ 3.

8  Menlo Park is located in San Mateo County and is under the jurisdiction of the Northern District

9  of California.  Defendants claim in their Motion that there is no connection between this action

10  and San Mateo County, California.  This is simply not the case, as a substantial part of the events

11  or omissions giving rise to this action occurred not just in California, but in San Mateo County.

12            The "events or omissions" on which a plaintiff's claim is based may occur in

13  several judicial districts.  *See e.g. Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2nd Cir. 1992).

14  Federal venue law *does not* require that a majority of the events or omissions occur in the district

15  where the suit is filed, nor that the events in the district where the suit is filed predominate; it is

16  sufficient that a substantial part of the events or omissions occurs in the district where the suit is

17  filed.  *Jenkins Brick Co. v Bremer,* 321 F.3d 1366, 1371 (11th Cir. 2003); *First of Mich. Corp. v.*

18  *Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) ("The fact that substantial activities took place in

19  district B does not disqualify district A as proper venue as long as 'substantial' activities took

20  place in A, too.  Indeed, ***district A should not be disqualified even if it is shown that the activities***

21  ***in district B were more substantial, or even the most substantial***").  (Emphasis added).

22            The events underlying this action took place in several geographic areas, including

23  but not limited to San Mateo County and Pennsylvania.  Defendants erroneously argue in their

24  Motion that the "only demonstrable connection of this action to San Mateo County is that Vaghar

25  apparently maintains a post office box in Menlo Park, California. *See* Mot. at 10.  This could not

26  be further from the truth.  The Agreement, signed by all parties in this action, is a contract

27  memorializing the negotiations, accords and obligations of the parties with respect to the Loan

28

1   Vaghar made to Killian and Marotta.  This entire action turns on the very existence of the

2   Agreement and its terms.

3           The Agreement was signed by all parties in late October 2006.  *See* Vaghar Decl. at

4   ¶ 12-13.  Vaghar, Killian and Marotta began negotiating the terms of the Agreement following

5   Killian and Marotta's breach of the Note, as an alternative manner of settling Killian and

6   Marotta's financial obligations to Vaghar.  *See* Vaghar Decl. at ¶ 12-13.  As of sometime in May

7   of 2006 Vaghar had moved to Menlo Park, and was residing in San Mateo County.  *See* Vaghar

8   Decl. at ¶ 3.  The vast majority of all communications between the parties, via telephone and

9   email, in relation to the Agreement occurred while Vaghar was in San Mateo County.  *See* Vaghar

10  Decl. at ¶ 12-13.  Indeed, the signed Agreement lists Vaghar's address as Menlo Park, California.

11          These facts sufficiently establish that a substantial part of the events giving rise to

12  this action took place in the Northern District of California.  *See Bates,* 980 F.2d at 867 (Court

13  held that, for venue purposes, the receipt of a collection notice is a substantial part of the events

14  giving rise to a claim under the Fair Debt Collection Practices Act, and that venue was proper in

15  the district in which the debtor resided and to which collection agency's demand for payment was

16  forwarded).  Given that the Agreement was negotiated in substantial part in San Mateo County,

17  and that Killian and Marotta engaged in continuing business negotiations with Vaghar while he

18  resided in San Mateo County, venue is proper in this District.

19          **D.      This Action Should Not be Transferred to Pennsylvania**

20          This action should not be transferred to the Eastern District of Pennsylvania under

21  20 U.S.C. § 1404(a) as defendants request, as this Court has personal jurisdiction over all

22  defendants and venue is proper in this District.  Section 1404(a) provides that transfer is to the

23  discretion of the court.  A plaintiff's choice of forum, while not dispositive, "should be given

24  weight when deciding whether to grant a motion to change venue."  *Lewis v. ACB Business*

25  *Services, Inc.,* 135 F.3d 389, 413 (6th Cir. 1998).  Defendants correctly claim that in weighing a

26  transfer under section 1404(a), Courts apply the same factors used for dismissal under forum non

27  conveniens.  *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2nd 834. 843 (9th Cir. 1986).

28

1    Under this framework, the defendant must make a strong showing of inconvenience to warrant

2    upsetting the plaintiff's choice of forum. *Mizokami Bros. of Arizona v. Mobay Chemical Corp.,*

3    660 F.2d 712, 718 (8th Cir.1981); *Continental Oil Co. v. Atwood & Morrill Co.,* 265 F.Supp. 692,

4    699 (D.Mont.1967). Defendants have not made the necessary showing in favor of a transfer.

5              Defendants again fail to mention that the Agreement provides a forum selection

6    clause designating California as the proper forum for resolution of this dispute. A forum selection

7    clause is a "significant factor that figures centrally in the district court's calculus" as to whether to

8    grant a transfer. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

9    Given that a substantial part of the acts in this action took place in this District, the selection of

10   Forum in the Agreement should be given great deference here.

11             Moreover, defendants' central arguments in favor of transfer relate to the

12   convenience of both defendants and certain potential "witnesses." A court should not order a

13   transfer simply to make it more convenient for defendant as "the venue transfer provisions of

14   Section 1404(a) are not meant to merely shift the inconvenience to the plaintiff." *Reed Elsevier,*

15   *Inc. v. Innovator Corp.* 105 F.Supp.2d 816, 821 (S.D. OH. 2000). Defendants have availed

16   themselves of the protections of California law and have maintained an ongoing business

17   relationship with Vaghar, who resides in this District. Apart from claiming that relevant

18   documents and witnesses are located in Philadelphia, defendants have made no specific showing

19   of the inconvenience they or their witnesses (who are not named or specified) would suffer.

20   Defendants have offered no compelling reasons to this Court in their Motion why this action

21   should be transferred. Indeed, the weight of the evidence suggests this action should remain in

22   this Court.

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. C 07 4083 MMC

1

### E.    Conclusion

2    For the foregoing reasons, this action should not be dismissed for lack of personal

3 jurisdiction over the defendants or for improper venue. Additionally, this action should not be

4 transferred from this Court to the Eastern District of Pennsylvania.

5

6

Dated: October 26, 2007                                GOODWIN PROCTER LLP

7

8

9                                              Lloyd Winawer (SBN 157823)
                                               Blake E. Williams (SBN 233158)
10                                             GOODWIN PROCTER LLP
                                               101 California Street
11                                             San Francisco, California 94111
                                               Tel.: 415.733.6000
12                                             Fax: 415.677.9041
                                               lwinawer@goodwinprocter.com
13                                             bwilliams@goodwinprocter.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16