Lloyd Winawer (SBN 157823)
Blake E. Williams (SBN 233158)
GOODWIN PROCTER LLP
101 California Street
San Francisco, California  94111
Tel.: 415.733.6000
Fax: 415.677.9041
lwinawer@goodwinprocter.com
bwilliams@goodwinprocter.com

Attorneys for Plaintiff Vincent Kamyar Vaghar

UNITED STATES DISTRICT COURT OF CALIFORNIA

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| VINCENT KAMYAR VAGHAR,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID J. KILLIAN; ANTHONY M. MAROTTA; and ROSA COURT, LLC, a New Jersey limited liability company,<br><br>        Defendants. | Case No. C 07 4083 MMC<br><br>**DECLARATION OF VINCENT KAMYAR VAGHAR IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER VENUE** |

I, Vincent Kamyar Vaghar, declare:

1.     I am an adult individual over eighteen years of age.  I make this declaration in support of my Opposition to Defendants Motion to Dismiss the Second Amended Complaint, or in the Alternative, to Transfer Venue of this matter to the Eastern District of Pennsylvania.  I have personal knowledge of the matters stated in this declaration and could and would competently testify thereto if called upon as a witness at trial or any other proceeding in this matter.

2.     I am an investor and real estate developer.

3.     At all times relevant to this matter I have resided in the State of California. At the time I entered into the Agreement for Settlement of Debt (the "Agreement") with

1    Defendants I resided at 1031 Santa Cruz Ave., Menlo Park, CA 94025. I have resided in Menlo

2    Park since sometime in May of 2006. From 1997 through sometime in May of 2006 I resided in

3    Los Angeles, California. I have resided at my present Menlo Park address at the time this suit was

4    filed.

5        4.    I met Defendant David Killian ("Killian") through a mutual friend in April

6    of 2002 in Los Angeles, California. Our meeting was primarily social but it was on this occasion

7    in which we first discussed the possibility of working together on various real estate projects. I

8    was later introduced to Defendant Anthony Marotta ("Marotta") through Killian.

9        5.    From 2002 through 2006 Killian visited California numerous times. On

10    many of these visits I met with Killian. While these meetings were primarily social, Killian and I

11    habitually discussed potential real estate development investments in Philadelphia as well as

12    California, Florida and Nevada and explored the possibility of working with one another.

13        6.    Sometime in 2004 I received a call from Marotta to my telephone in Los

14    Angeles. The purpose of Marotta's call was to solicit funds from me for a condominium

15    development project in Philadelphia nicknamed Trinity. My accountant Robert Baral was

16    additionally on the call. Marotta pitched the project to me and discussed his need to raise funds.

17    My accountant advised me not to invest in the project. I took my accountants advice and passed

18    on the opportunity.

19        7.    In or about May 2005 Killian placed a telephone call to me in Los Angeles.

20    The purpose of Killian's call was to discuss the Rosa Court project at issue in this suit. Killian

21    pitched the project to me and asked if I would be interested in investing in the Rosa Court

22    condominium project. I was interested in the project, and pursuant my conversation with Killian I

23    traveled to Philadelphia to view the site of the project. I brought with me to Philadelphia an

24    unsigned copy of the original promissory note (the "Note"). After viewing the site I agreed to

25    invest in the Rosa Court project, and Killian, Marotta and I signed the promissory note in my

26    favor.

27        8.    My investment in the Rosa Court project was originally secured by a

28

DECLARATION OF VINCENT KAMYAR VAGHAR ISO OPPOSITION TO MOTION TO DISMISS
CASE NO. C 07 4083 MMC

1  personal guarantee signed by Killian, Marotta and myself. This guarantee provided that it was to

2  be "governed by and construed pursuant to the laws and by the courts of the State of California,"

3  and that any disputes arising under the guarantee "shall be settled by arbitration in the County of

4  Los Angeles, State of California, in accordance with the rules then obtained from the American

5  Arbitration Association." *See* Note, a true and correct copy attached to this Declaration as Exhibit

6  A.

7          9.     Before entering into the Note I specifically discussed with Killian and

8  Marotta that any dispute would be governed by California law and arbitrated in California. Killian

9  and Marotta both consented to this agreement and duly signed the personal guarantee.

10          10.    In or about November of 2005, I received a call from Killian on my

11  telephone in Los Angeles. The purpose of Killian's call was to solicit funds from me for a real

12  estate development project at 12th and Jackson St. in Philadelphia. Killian and I discussed the

13  project and the possibility that I would invest funds in the project. Pursuant to this conversation, I

14  traveled to Philadelphia to view the site of the development. Following my visit, and after

15  returning to Los Angeles, I provided Marotta with a cashiers' check in the amount of $40,000.

16  $25,000 of this check was to go to the down payment on the site, and the remaining $15,000 was

17  provided on request of Marotta for additional "soft costs" such as inspection fees and architectural

18  costs. My investment in this project was secured by a personal guarantee signed by Killian,

19  Marotta and myself, the language of which was nearly identical to the language contained in the

20  Note. This guarantee provided that it was to be "governed and construed pursuant to the laws and

21  by the courts of the State of California," and that any disputes arising under the guarantee "shall be

22  settled by arbitration in the County of Los Angeles, State of California, in accordance with the

23  rules then obtained from the American Arbitration Association." *See* Personal Guarantee on 12th

24  and Jackson St. Project, a true and correct copy attached to this Declaration as Exhibit B. Killian

25  and Marotta never satisfied their financial obligation to me under the guarantee, and this matter is

26  currently in the early stages of arbitration with the American Arbitration Association (AAA#

27  72148 898 07 JENF). Defendants have never disputed the propriety of Los Angeles as the venue

28

DECLARATION OF VINCENT KAMYAR VAGHAR ISO OPPOSITION TO MOTION TO DISMISS
CASE NO. C 07 4083 MMC

1    of this arbitration, nor have they disputed that California law governs this dispute.

2              11.    Before entering into the personal guarantee on the 12th and Jackson St.

3    project I specifically discussed with Killian and Marotta that any dispute would be governed by

4    California law and arbitrated in California.  Killian and Marotta both consented to this agreement

5    and duly signed the personal guarantee.

6              12.    The Note on the Rosa Court project came due on May 31, 2006.  Pursuant

7    to numerous conversations I had with Killian and Marotta both telephonically and over email

8    leading up to the Note coming due, it was apparent to me that Killian and Marotta would not be

9    able to satisfy their obligation to me under the Note.  The May 31, 2006 deadline passed and

10   Killian and Marotta failed to satisfy their obligation.  Sometime in 2006, before I moved to Menlo

11   Park in May 2006, Killian traveled to Los Angeles.  During his visit he came to my apartment in

12   Los Angeles and we discussed alternative arrangements for settlement of Killian and Marotta's

13   obligation to me under the Note.  Additionally, Marotta and Killian placed numerous calls to me

14   in both Los Angeles California and Menlo Park California in mid-2006 to discuss alternative

15   arrangements for the settlement of Killian and Marotta's obligation to me.  The vast majority of

16   the negotiations over the terms of the Agreement occurred while I was in Menlo Park, California.

17             13.    Pursuant to my conversations and meetings with Killian and Marotta in

18   mid-2006, Killian, Marotta and I agreed upon an arrangement wherein their financial obligation to

19   me under the personal guarantee would be secured through an agreement to provide me with a

20   condominium unit free and clear of any liens and indebtedness in the Rosa Court development

21   once construction was completed.  A majority of these negotiations occurred over the telephone

22   while I was residing in Menlo Park, California.  Killian and Marotta repeatedly assured me during

23   our numerous conversations (nearly all occurring over the telephone while I was in Menlo Park)

24   that construction on the Rosa Court complex would be completed by the end of November 2006.

25   Although Marotta insisted that the last day under the Agreement to transfer the condominium to

26   me should be November 31, 2006, I suggested that in order to assure that Killian and Marotta

27   would be able to perform under this new arrangement, the condominium in Rosa Court should be

28

4

1    transferred to me no later than January 31, 2007. Killian and Marotta consented to this deadline.

2    This arrangement was memorialized in the Agreement, which was signed by all parties in late

3    October, 2006 (no earlier than October 20, 2006) and effective as of October 15, 2006. A true and

4    correct copy of the Agreement is attached to this Declaration as Exhibit C. Defendants did not

5    meet the January 31, 2007 deadline and to this date have not satisfied their obligation to me.

6                   14.    Before entering into the Agreement I specifically discussed with Killian and

7    Marotta that any dispute would be governed by California law and heard in a court venued in

8    California. Killian and Marotta both consented to this agreement verbally and over email, as

9    evidenced by an email from Marotta (Killian was copied on the email) dated October 19, 2006. A

10   true and correct copy of Marotta's October 19, 2006 email is attached to this Declaration as

11   Exhibit D. Additionally, clause 3.6 of the Agreement expressly states that the Agreement "has

12   been negotiated and entered into in the State of California, and is governed by, construed and

13   enforced in accordance with the laws of the State of California, applied to contracts made in

14   California by California domiciliaries to be wholly performed in California, except to the extent

15   the laws of Pennsylvania are required with respect to the conveyance of the Unit (or the Substitute

16   Unit) to Kamyar." *See* Agreement, a true and correct copy of which is attached to this Declaration

17   as Exhibit C.

18                   Executed this 26th day of October, 2007, in the State of California.

19                   I declare under penalty of perjury under the laws of the United States that the

20   foregoing is true and correct.

21

22

23                                                              Vincent Kamyar Vaghar

24

25

26

27

28

# EXHIBIT
# A

# PROMISSORY NOTE

$325,000.00                                                    Date: May 31, 2005

For value received, the undersigned David Killian and Anthony Marotta (collectively the "Promisor") each as principal, jointly and severally, promise to pay to the order of Kamyar Vaghar (the "Payee"), at 10580 Wilshire Blvd., Suite 4SE, Los Angeles, California 90024, (or at such other place as the Payee may designate in writing) the sum of $325,000.00 with interest from May 31, 2005, on the unpaid principal at the rate of 30.00 percent annually.

The unpaid principal and accrued interest shall be payable in full on May 31, 2006 (the "Due Date").  All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

The Promisor reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

If any payment obligation under this Note is not paid when due, the Promisor promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

If any of the following events of default occur, this Note and any other obligations of the Promisor to the Payee, shall become due immediately, without demand or notice:

1)  the failure of the Promisor to pay the principal and any accrued interest in full on or before the Due Date;

2)  the death of the Promisor(s) or Payee(s);

3)  the filing of bankruptcy proceedings involving the Promisor as a Debtor;

4)  the application for appointment of a receiver for the Promisor;

5)  the making of a general assignment for the benefit of the Promisor's creditors;

6)  the insolvency of the Promisor; or

7)  the misrepresentation by the Promisor to the Payee for the purpose of obtaining or extending credit.

If any of the above defaults apply to one Promisor, all Promisors shall be deemed in default of this Note regardless of whether all Promisors are directly involved in the default.

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. Promisor waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

No renewal or extension of this Note, delay in enforcing any right of the Payee under this Note, or assignment by Payee of this Note shall affect the liability of the Promisor.  All rights of the Payee under this Note are cumulative and may be exercised concurrently or consecutively at the Payee's option.

This Note shall be construed in accordance with the laws of the State of California.

Signed this _____ day of _____, 2005 _____, at _____

David Killian

By: _____
David Killian

Anthony Marotta

By: _____
Anthony Marotta

-2-

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY is made this 8th day of May, 2005, by and between DAVID KILLIAN  ("Killian") Social Security #███████ address: 1337 Pine Street #201. Philadelphia, PA 19107, ANTHONY MAROTTA ("Marotta") Social Security #███████ address: 271 Delsea Drive. Sewell, NJ 08080, and VINCENT KAMYAR VAGHAR. (referred to as "Beneficiary") with reference to the following facts:

A.    Killian and Marotta ("Killian/Marotta") are the managing members of Rosa Court, LLC ("Company"), a New Jersey Limited Liability Company which currently owns that certain real property ("Property") legally described on Exhibit "A", attached hereto and incorporated herein by this reference.

B.    The Company desires Beneficiary to loan it $325,000 against Project Rosa Court Townhomes, located at Federal Street and Clarion Street in Philadelphia, PA, Unit #14.

C.    As an inducement to Beneficiary to make the loan, Killian/Marotta hereinafter guarantees to Beneficiary the full payment and performance of all indebtedness and obligations as described in the Loan documents.

NOW, THEREFORE, in consideration of covenants and promises contained herein and in order to induce the Beneficiary to make the loan contemplated hereby, the parties hereto agree as follows:

1.    In consideration for making the loan, Killian/Marotta hereby, absolutely and unconditionally, guarantees to Beneficiary and their executors, administrators, successors, endorsees, transferees, heirs, successors and assigns, the prompt and complete payment when due (whether at the stated maturity, by acceleration or otherwise) of the aggregate unpaid principal amount of, and accrued interest on, the instruments evidencing such indebtedness Page 1 of 6and any and all renewals, extensions, modifications of said Note and all other obligations and liabilities due of Company to Beneficiaries now existing or hereafter incurred arising out of or in connection with the loan or Note, and Killian/Marotta further agrees to pay any and all expenses which may be paid or incurred by Beneficiary in collection, whether from Company, Killian/Marotta or otherwise, any or all of the indebtedness described herein and/or enforcing any rights hereunder, including but not limited to attorney's fees, court costs and other costs and expenses incurred by Beneficiaries.

2.    The obligations of Killian/Marotta under the Guaranty shall be continuing, absolute and unconditional under any and all

circumstances and shall be paid by Killian/Marotta regardless of (a) the validity, regularity, legality or enforceability of the Note, or any other documents concerning the indebtedness; (b) any defense, offset or counterclaim which may at any time be available to or be asserted by Killian/Marotta against Beneficiary; or (c) any other event or circumstance whatsoever which may constitute, or might be construed to constitute, an equitable or legal discharge of a surety or a guarantor, it being the purpose and intent of Killian/Marotta that this Guaranty and Killian/Marotta's obligations hereunder shall remain in full force and effect and be binding upon Killian/Marotta and his successors until the Note and the obligations of Killian/Marotta under this Guaranty shall have been satisfied by payment in full.

3. Beneficiary may, at their election, foreclose on any security held by Beneficiary by one or more judicial or nonjudicial sales, whether or not every aspect of such sales is commercially reasonable, or exercise any right or remedy Beneficiary may have against Company, or any security, without affecting or impairing in any way this liability of Killian/Marotta under this Guaranty. Killian/Marotta waives any defense arising out of such an election by Beneficiary even if the election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Killian/Marotta against Beneficiary or any security. Until all obligations of Company to Beneficiary are paid in full, Killian/Marotta shall have no right of subrogation, shall waive any right to enforce any remedy that Company now has or may hereafter have against Beneficiary, and shall waive any benefit of, and any right to, participation in any security now or hereafter held by Beneficiary.    Killian/Marotta waives all notices of the existence, creation, or incurring of new or additional obligations and assumes all responsibility for keeping himself informed of Company's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the indebtedness and the nature, scope and extent of the risks that Killian/Marotta assumes and incurs under the Guaranty, and agrees that Beneficiary shall have no duty to advice Killian/Marotta of information known to them regarding those circumstances or risks.

4. Killian/Marotta hereby consents that, without the necessity of any reservation of rights against Killian/Marotta and without notice to or assent by Killian/Marotta, any demand for payment of the indebtedness made by Beneficiary may be rescinded by Beneficiary and any of the obligations continued, or the liability of any party upon or for any part thereof, or any collateral security or guaranty therefore, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, settled, compromised, subordinated,

waived, surrendered, or released by Beneficiary and/or the Note, any collateral security documents or other guaranties or documents in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, as Beneficiary may deem advisable from time to time, and/or any collateral security at any time securing the payment of the indebtedness may be sold, exchanged, waived, surrendered or released, with Killian/Marotta remaining obligated hereunder notwithstanding the occurrence of any of the foregoing.   Beneficiary shall not have any duty to protect, secure, perfect or insure any collateral security at any time securing the payment of the Note. This is a guaranty of payment and not merely of collection. Killian/Marotta waives any requirement that Beneficiary make any demand, commence suit or exercise any other rights or remedy under the Note or other documents concerning the indebtedness prior to enforcing its rights against Killian/Marotta hereunder. Killian/Marotta waives diligence, presentment, protest, demand for payment and/or notice of default or non-payment to or upon Company or Killian/Marotta with respect to the indebtedness.

5.    Killian/Marotta hereby unconditionally and absolutely guarantees the payment of the indebtedness, regardless of any act or omission of Beneficiary or any party with reference to any of the indebtedness or any security or rights existing or to exist in connection therewith. Killian/Marotta agrees that Beneficiary in no way shall be obligated to bring or prosecute any action against Company or the collateral security for any of the indebtedness or make any demand on Company or give any notice of any kind to any party prior to enforcing its rights against Killian/Marotta hereunder. Beneficiaries shall not be liable or accountable in any respect, nor shall Killian/Marotta have a right of recourse against Beneficiary by reason of any act or omission on the part of Beneficiary in connection with any of the matters herein contained.

6.    This Guaranty shall remain in full force and effect until all of the indebtedness has been fully paid and all costs and expenses due hereunder has been paid, and shall be binding on Killian/Marotta, his heirs, successors, executors, administrators, and legal representatives, and, along with all rights and benefits existing and to exist hereunder, shall inure to the benefit of and be available to Beneficiary and their heirs, executors, administrators, successors and assigns.

7.    Killian/Marotta waives any and all notice of the creation, renewal, extension or accrual of any of the Note and notice of or proof of reliance by Beneficiary upon this Guaranty or acceptance of this Guaranty. The indebtedness shall conclusively be deemed

to have been created, contracted or incurred in reliance upon this
Guaranty, and all dealings between Company or Killian/Marotta and Beneficiaries
shall likewise be conclusively presumed to have been had or
consummated in reliance upon this Guaranty.

8.    This Guaranty shall continue to be effective, or be
reinstated, as the case may be, if at any time, payment, or any
part thereof, of any of the payments made pursuant to the Note is
rescinded or must otherwise be restored or returned by
Beneficiary upon the insolvency, bankruptcy or reorganization of
Company, or otherwise, all as though such payment had not been made.

9.    Notwithstanding any payment or payments made by
Killian/Marotta hereunder, Killian/Marotta shall not be entitled to be subrogated to
any of the rights of Beneficiary against Company or any other
guaranty or collateral security held by Beneficiary for the
payment of the Note until all amounts owing to Beneficiary by
Company for or on account of the Note and specified herein shall have
been paid in full and this Guaranty terminated.

10. No right or power of Beneficiary under this
Guaranty shall be deemed to have been waived by any act or conduct
on the part of Beneficiaries, or by any neglect to exercise that
right or power, or by any delay in so doing; and every right or
power shall continue in full force and effect until specifically
waived or released by an instrument in writing executed by
Beneficiary.

11. If at any time during the continuance of this
Guaranty or after termination or dissolution thereof, any dispute,
difference or question shall arise between Killian/Marotta and/or
Beneficiary, or any of their representatives in respect to this
Guaranty or any provision, term or condition contained herein, or
the rights or liabilities of Killian/Marotta and/or Beneficiary or their
representatives under this Guaranty or otherwise, every such
dispute, difference or question shall be settled by arbitration in
the County of Los Angeles, State of California, in accordance with the
rules then obtained from the American Arbitration Association and
judgment upon any award rendered may be entered in any court having
jurisdiction thereof.

12. No modification, alteration or waiver of any term,
condition, provision, or covenant of this Guaranty shall be valid
unless in writing and signed by Killian/Marotta and Beneficiary.

13. This Guaranty shall be governed by and construed

pursuant to the laws and by the courts of the State of California.
If one or more provisions contained in this Guaranty shall, for any
reason, be held illegal, unenforceable, or waived in any respect,
the illegality, unenforceability or waiver of such provision shall
not affect any other provision of this Guaranty and the remaining
provisions hereof shall nevertheless be carried into effect.

14. Neither this Guaranty nor any of the duties or
obligations under this Guaranty may be assigned by Killian/Marotta without
the written consent of the Beneficiary.

15. Should any litigation or arbitration be commenced
between Killian/Marotta and/or Beneficiary concerning the terms or
enforcement of this Guaranty, or the rights and duties of any in
relation thereto, the party prevailing in such litigation or
arbitration shall be entitled, in addition to such other relief as
may be granted, to a reasonable sum as and for attorney's fees
incurred in such litigation or arbitration which shall be
determined by the court or arbitrator in such litigation or
arbitration, or in a separate action filed for that purpose.

16. The parties agree they will execute any further
documents, and will perform any acts which are now or may become
necessary, proper or expedient to carry out the purposes and intent
of this Guaranty.

IN WITNESS WHEREOF the parties have executed this
Guaranty at Philadelphia, PA, on the day and year first above written.

Guarantor:

_____
DAVID KILLIAN

_____
ANTHONY MAROTTA

Beneficiary:

_____
VINCENT KAMYAR VAGHAR

# EXHIBIT
# B

# PROMISSORY NOTE

$40,000.00                                                Date: January 10, 2006

For value received, the undersigned David Killian and Anthony Marotta (collectively the "Promisor") each as principal, jointly and severally, promise to pay to the order of Kamyar Vaghar (the "Payee"), at 152 South Peck Drive, Suite #106, Beverly Hills, California 90212, (or at such other place as the Payee may designate in writing) the sum of $40,000.00 with interest from January 9, 2006, on the unpaid principal at the rate of 4.00 annually.

The unpaid principal and accrued interest shall be payable in full on March 10, 2006 (the "Due Date"). All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

The Promisor reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

If any payment obligation under the Note is not paid when due, the Promisor promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

If any of the following events of default occur, this Note and any other obligations of the Promisor to the Payee, shall become due immediately, without demand or notice:

1) the failure of the Promisor to pay the principal and any accrued interest in full on or before the Due Date;

2) the death of the Promisor(s) or Payee(s);

3) the filing of bankruptcy proceedings involving the Promisor as a Debtor;

4) the application for appointment of a receiver for the Promisor;

5) the making of a general assignment for the benefit of the Promisor's creditors;

6) the insolvency of the Promisor; or

7) the misrepresentation by the Promisor to the Payee for the purpose of obtaining or extending credit.

If any of the above defaults apply to one Promisor, all Promisors shall be deemed in default of this Note regardless of whether all Promisors are directly involved in the default.

If any one or more of the provisions of the Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. Promisor waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

- 1 -

No renewal or extension of this Note, delay in enforcing any right of the Payee under this Note, or assignment by Payee of the Note shall affect the liability of the Promisor. All rights of the Payee under this note are cumulative and may be exercised concurrently or consecutively at the Payee's option.

This Note shall be construed in accordance with the laws of the State of California.

Signed this _____11_____ day of _____JANUARY_____, 20 06 at

_____.

David Killian

By: _____
David Killian

Anthony Marotta

By: _____
Anthony Marotta

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY is made this 10th day of January, 2006, by and between DAVID KILLIAN ("Killian") Social Security #███████ address: 1337 Pine Street #201. Philadelphia, PA 19107, ANTHONY MAROTTA ("Marotta") Social Security #████████ address: 271 Delsea Drive. Sewell, NJ 08080, and VINCENT KAMYAR VAGHAR. (referred to as "Beneficiary") with reference to the following facts:

    A.   Killian and Marotta ("Killian/Marotta") are the managing members of Rosa Court, LLC ("Company"), a New Jersey Limited Liability Company which currently owns that certain real property ("Property") legally described on Exhibit "A", attached hereto and incorporated herein by this reference.

    B.   The Company desires Beneficiary to loan it $40,000 against Project Rosa Court Townhomes, located at Federal Street and Clarion Street in Philadelphia, PA.

    C.   As an inducement to Beneficiary to make the loan, Killian/Marotta hereinafter guarantees to Beneficiary the full payment and performance of all indebtedness and obligations as described in the Loan documents.

NOW, THEREFORE, in consideration of covenants and promises contained herein and in order to induce the Beneficiary to make the loan contemplated hereby, the parties hereto agree as follows:

    1.   In consideration for making the loan, Killian/Marotta hereby, absolutely and unconditionally, guarantees to Beneficiary and their executors, administrators, successors, endorsees, transferees, heirs, successors and assigns, the prompt and complete payment when due (whether at the stated maturity, by acceleration or otherwise) of the aggregate unpaid principal amount of, and accrued interest on, the instruments evidencing such indebtedness Page 1 of 6 and any and all renewals, extensions, modifications of said Note and all other obligations and liabilities due of Company to Beneficiaries now existing or hereafter incurred arising out of or in connection with the loan or Note, and Killian/Marotta further agrees to pay any and all expenses which may be paid or incurred by Beneficiary in collection, whether from Company, Killian/Marotta or otherwise, any or all of the indebtedness described herein and/or enforcing any rights hereunder, including but not limited to attorney's fees, court costs and other costs and expenses incurred by Beneficiaries.

    2.   The obligations of Killian/Marotta under the Guaranty shall be continuing, absolute and unconditional under any and all circumstances and shall be paid by Killian/Marotta regardless of (a) the

validity, regularity, legality or enforceability of the Note, or
any other documents concerning the indebtedness; (b) any defense,
offset or counterclaim which may at any time be available to or be
asserted by Killian/Marotta against Beneficiary; or (c) any other event
or circumstance whatsoever which may constitute, or might be
construed to constitute, an equitable or legal discharge of a
surety or a guarantor, it being the purpose and intent of Killian/Marotta
that this Guaranty and Killian/Marotta's obligations hereunder shall remain
in full force and effect and be binding upon Killian/Marotta and his
successors until the Note and the obligations of Killian/Marotta under this
Guaranty shall have been satisfied by payment in full.

     3.   Beneficiary may, at their election, foreclose on
any security held by Beneficiary by one or more judicial or
nonjudicial sales, whether or not every aspect of such sales are
commercially reasonable, or exercise any right or remedy
Beneficiary may have against Company, or any security, without
affecting or impairing in any way this liability of Killian/Marotta under
this Guaranty. Killian/Marotta waives any defense arising out of such an
election by Beneficiary even if the election operates to impair
or extinguish any right of reimbursement or subrogation or other
right or remedy of Killian/Marotta against Beneficiary or any security.
Until all obligations of Company to Beneficiary are paid in full,
Killian/Marotta shall have no right of subrogation, shall waive any right to
enforce any remedy that Company now has or may hereafter have against
Beneficiary, and shall waive any benefit of, and any right to,
participation in any security now or hereafter held by
Beneficiary.   Killian/Marotta waives all notices of the existence,
creation, or incurring of new or additional obligations and assumes
all responsibility for keeping himself informed of Company's
financial condition and assets, and of all other circumstances
bearing upon the risk of nonpayment of the indebtedness and the
nature, scope and extent of the risks that Killian/Marotta assumes and incurs
under the Guaranty, and agrees that Beneficiary shall have no
duty to advice Killian/Marotta of information known to them regarding those
circumstances or risks.

     4.   Killian/Marotta hereby consents that, without the necessity
of any reservation of rights against Killian/Marotta and without notice to
or assent by Killian/Marotta, any demand for payment of the indebtedness made
by Beneficiary may be rescinded by Beneficiary and any of the
obligations continued, or the liability of any party upon or for
any part thereof, or any collateral security or guaranty therefore,
may, from time to time, in whole or in part, be renewed, extended,
amended, modified, accelerated, settled, compromised, subordinated,
waived, surrendered, or released by Beneficiary and/or the Note,

any collateral security documents or other guaranties or documents in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, as Beneficiary may deem advisable from time to time, and/or any collateral security at any time securing the payment of the indebtedness may be sold, exchanged, waived, surrendered or released, with Killian/Marotta remaining obligated hereunder notwithstanding the occurrence of any of the foregoing.    Beneficiary shall not have any duty to protect, secure, perfect or insure any collateral security at any time securing the payment of the Note. This is a guaranty of payment and not merely of collection. Killian/Marotta waives any requirement that Beneficiary make any demand, commence suit or exercise any other rights or remedy under the Note or other documents concerning the indebtedness prior to enforcing its rights against Killian/Marotta hereunder. Killian/Marotta waives diligence, presentment, protest, demand for payment and/or notice of default or non-payment to or upon Company or Killian/Marotta with respect to the indebtedness.

5.    Killian/Marotta hereby unconditionally and absolutely guarantees the payment of the indebtedness, regardless of any act or omission of Beneficiary or any party with reference to any of the indebtedness or any security or rights existing or to exist in connection therewith. Killian/Marotta agrees that Beneficiary in no way shall be obligated to bring or prosecute any action against Company or the collateral security for any of the indebtedness or make any demand on Company or give any notice of any kind to any party prior to enforcing its rights against Killian/Marotta hereunder. Beneficiaries shall not be liable or accountable in any respect, nor shall Killian/Marotta have a right of recourse against Beneficiary by reason of any act or omission on the part of Beneficiary in connection with any of the matters herein contained.

6.    This Guaranty shall remain in full force and effect until all of the indebtedness has been fully paid and all costs and expenses due hereunder has been paid, and shall be binding on Killian/Marotta, his heirs, successors, executors, administrators, and legal representatives, and, along with all rights and benefits existing and to exist hereunder, shall inure to the benefit of and be available to Beneficiary and their heirs, executors, administrators, successors and assigns.

7.    Killian/Marotta waives any and all notice of the creation, renewal, extension or accrual of any of the Note and notice of or proof of reliance by Beneficiary upon this Guaranty or acceptance of this Guaranty. The indebtedness shall conclusively be deemed to have been created, contracted or incurred in reliance upon this

Guaranty, and all dealings between Company or Killian/Marotta and Beneficiaries shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guaranty.

8.    This Guaranty shall continue to be effective, or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any of the payments made pursuant to the Note is rescinded or must otherwise be restored or returned by Beneficiary upon the insolvency, bankruptcy or reorganization of Company, or otherwise, all as though such payment had not been made.

9.    Notwithstanding any payment or payments made by Killian/Marotta hereunder, Killian/Marotta shall not be entitled to be subrogated to any of the rights of Beneficiary against Company or any other guaranty or collateral security held by Beneficiary for the payment of the Note until all amounts owing to Beneficiary by Company for or on account of the Note and specified herein shall have been paid in full and this Guaranty terminated.

10. No right or power of Beneficiary under this Guaranty shall be deemed to have been waived by any act or conduct on the part of Beneficiaries, or by any neglect to exercise that right or power, or by any delay in so doing; and every right or power shall continue in full force and effect until specifically waived or released by an instrument in writing executed by Beneficiary.

11. If at any time during the continuance of this Guaranty or after termination or dissolution thereof, any dispute, difference or question shall arise between Killian/Marotta and/or Beneficiary, or any of their representatives in respect to this Guaranty or any provision, term or condition contained herein, or the rights or liabilities of Killian/Marotta and/or Beneficiary or their representatives under this Guaranty or otherwise, every such dispute, difference or question shall be settled by arbitration in the County of Los Angeles, State of California, in accordance with the rules then obtained from the American Arbitration Association and judgment upon any award rendered may be entered in any court having jurisdiction thereof.

12. No modification, alteration or waiver of any term, condition, provision, or covenant of this Guaranty shall be valid unless in writing and signed by Killian/Marotta and Beneficiary.

13. This Guaranty shall be governed by and construed pursuant to the laws and by the courts of the State of California.

If one or more provisions contained in this Guaranty shall, for any reason, be held illegal, unenforceable, or waived in any respect, the illegality, unenforceability or waiver of such provision shall not affect any other provision of this Guaranty and the remaining provisions hereof shall nevertheless be carried into effect.

14. Neither this Guaranty nor any of the duties or obligations under this Guaranty may be assigned by Killian/Marotta without the written consent of the Beneficiary.

15. Should any litigation or arbitration be commenced between Killian/Marotta and/or Beneficiary concerning the terms or enforcement of this Guaranty, or the rights and duties of any in relation thereto, the party prevailing in such litigation or arbitration shall be entitled, in addition to such other relief as may be granted, to a reasonable sum as and for attorney's fees incurred in such litigation or arbitration which shall be determined by the court or arbitrator in such litigation or arbitration, or in a separate action filed for that purpose.

16. The parties agree they will execute any further documents, and will perform any acts which are now or may become necessary, proper or expedient to carry out the purposes and intent of this Guaranty.

IN WITNESS WHEREOF the parties have executed this Guaranty at Philadelphia, PA, on the day and year first above written.

Guarantor:

_____
DAVID KILLIAN

_____ 1.11.06
ANTHONY MAROTTA

Beneficiary:

_____
VINCENT KAMYAR VAGHAR

# EXHIBIT
# C

## AGREEMENT FOR SETTLEMENT OF DEBT

This Agreement for Settlement of Debt ("Agreement") is entered into effective October 15, 2006 by and between Kamyar Vaghar ("Kamyar") and David Killian and Anthony Marotta (collectively "Debtors") and made with reference to the following facts:

A.    Kamyar loaned Debtors the sum of $325,000 as evidenced by a promissory note dated May 31, 2005 (the "Debt").

B.    Debtors are the managing members of Rosa Court, LLC, a New Jersey limited liability company (the "LLC").

C.    Debtors contributed the funds constituting the debt to the LLC for use in the construction of a 17 unit condominium project commonly known as the Rosa Court Townhomes and located at the intersections of Federal and Juniper Streets and Federal and Clarion Streets in Philadelphia, Pennsylvania (the "Condo Project").

D.    Debtors desire to discharge the Debt by causing the LLC to convey to Kamyar one of the completed condominium units at the Condo Project free and clear of any liens and indebtedness.

NOW, THEREFORE, the parties agree as follows:

1.    Discharge of Debt.  The Debt is to be fully discharged and paid by Debtors to Kamyar as follows:

1.1    Selection of Condo Unit.  Kamyar selects condominium unit number 11 (the "Unit") at the Condo Project, which is legally described in attached Exhibit "A".

1.2    Conveyance of the Unit.  Upon completion of construction of the Unit, the LLC will convey good and marketable fee title in the Unit to Kamyar free and clear of all monetary liens and encumbrances other than non-delinquent real property taxes and assessments. The LLC will cause to be recorded with the county recorder's office in the county in which the Unit is located a duly executed and acknowledged warranty deed conveying title in the unit to Kamyar.  The LLC will pay for all recording costs as well as all applicable documentary transfer taxes and fees.  The LLC will also deliver to Kamyar an ALTA owner's title insurance policy (the "Title Policy") for an amount mutually agreed upon by Debtors and Kamyar and insuring Kamyar with good and marketable fee simple title free and clear of all monetary liens and encumbrances (other than non-delinquent real property taxes and assessments) and subject to such other matters as reasonably approved by Kamyar, at Kamyar's cost.

1.3    Completion of the Unit.  Debtors and the LLC represent to Kamyar that construction of the Unit should be completed within 90 days from the date of this Agreement.

M:\Vaghar\AgmtSettlementOfDebt.wpd

Although the Unit should be completed during this time frame, the LLC may not be able to convey the Unit to Kamyar at this time free and clear of all monetary liens because the Condo Project is subject to a lien securing payment of a construction loan in the principal amount of $4,500,000 (the "Construction Debt") in favor of Prudential Savings Bank ("Construction Lender"). The LLC must complete the sale of 13 condominium units in order to fully discharge the Construction Debt. Upon payment in full of the Construction Debt and the release and reconveyance by the Construction Lender of its lien against the Condo Project, the LLC will be able to convey the Unit to Kamyar in accordance with paragraph 1.2, above (entitled "Conveyance of the Unit"). However, Debtors will use their reasonable best efforts to cause the LLC to convey to Kamyar the Unit (or Substitute Unit) as provided in this Agreement prior to the full discharge of the Construction Debt (i.e. the Construction Lender would release and reconvey its lien against the Unit or Substitute Unit before the entire Construction Debt was paid).

      1.4    <u>Failure to Convey the Unit</u>.

      (i)    <u>Failure to Complete Construction</u>. Debtors anticipate to be able to cause the LLC to duly convey the Unit to Kamyar on or before January 31, 2007 (the "Conveyance Date."). If the LLC is unable to so convey the Unit to Kamyar because the Unit is not completed, then Kamyar has the right, by written notice to Debtors and the LLC, to select a substitute condominium unit (the "Substitute Unit") in the Condo Project for the Unit.

      (ii)    <u>Right to Specific Performance</u>. If Debtors default in their obligation to cause the LLC to convey the Unit (or a Substitute Unit) to Kamyar as provided in this Agreement by the Conveyance Date, then Kamyar will have the right to seek specific performance of Debtors' obligations to so to convey and record a lis pendens against the Unit (or the Substitute Unit). In this regard, the specific performance action will also be against the LLC.

      (iii)    <u>Lender Foreclosure</u>. If Debtors and the LLC are unable to perform their obligations under this Agreement by reason of a default under the Construction Debt and a sale of the Condo Project pursuant to a foreclosure by the Construction Lender, then the Debt will be due and payable by Debtors to Kamyar except that the interest rate from the date of the Debt is automatically reduced to 10% per annum. In this regard, Debtors agree that the venue for any legal action brought by Kamyar to collect the Debt from Debtors is Los Angeles, California.

      1.5    <u>Definitions</u>. The term "completion of construction" as to the Unit (or a Substitute Unit), means total and complete construction in accordance with the governmental permitted plans and specifications with installation of all improvements, equipment and amenities as provided for all the condominium units at the Condo Project, inclusive of the completion of all "punch list" type items requested by Kamyar within 45 days after obtaining possession. In addition, the Unit is to include the additional items described in attached Exhibit "B".

2.    <u>Performance by the LLC</u>. Debtors will cause the LLC to execute below its agreement to perform in accordance with the provisions of paragraph 1, above (entitled "Discharge of Debt"), including the right of Kamyar to seek specific performance of the LLC's obligation to convey to Kamyar the Unit (or a Substitute Unit). The Title Policy will be provided by the title insurance company the LLC is using for all sales involving the Condo Project.

3.    <u>General Provisions</u>.

3.1    <u>Notice</u>. Every notice, demand, request, consent, approval or other communication ("Notices") which any party is required or desires to make or communicate upon or to the other, must be in writing and is to be given or made or communicated by personally delivering the Notice or by mailing the Notice by registered or certified mail, first class postage and fees prepaid, return receipt requested, to the address described on the signature page of this Agreement, or transmitting the Notice by telefax to the number described on the signature page of this Agreement, or at such other address, addresses or telefax as any party may designate from time to time by Notice given as provided in this Agreement. All Notices so sent are be deemed to have been delivered, effective, made or communicated, as the case may be, at the time that the Notice and the required copies, if any, have been personally delivered or deposited, registered or certified, properly addressed as set forth in this Agreement, first class postage and fees prepaid, return receipt requested, in the United States mail, or the date such Notice was telefaxed if received by 4:00 p.m. on the date sent and if received after such time, the Notice is deemed given on the next following business day.

3.2    <u>Attorneys' Fees</u>. If any party (inclusive of the LLC) retains counsel for the purpose of instituting a legal action to enforce or prevent the breach of any provision of this Agreement (and legal action includes arbitration in the event the parties utilize arbitration), the non-prevailing party must pay to the prevailing party all costs and expenses incurred by the prevailing party, including reasonable expert witness fees, attorneys' fees and costs.

3.3    <u>Additional Documents</u>. In addition to the documents and instruments to be delivered as provided in this Agreement, each of the parties (inclusive of the LLC), from time to time at the request of the other Party, will execute and deliver to the other party such other documents and take such other action as may be reasonably necessary or proper to more effectively carry out the terms of this Agreement.

3.4    <u>Validity - Waiver</u>. No breach of any provision of this Agreement may be waived unless in writing. Waiver of any one breach of any provision of this Agreement is not deemed to be a waiver of any other breach of the same or any other provision of this Agreement. This Agreement may be amended only by a written agreement executed by the parties in interest at the time of the modification.

3.5    <u>Interpretation</u>. No provision of this Agreement is to be interpreted for or against either party (inclusive of the LLC), because that party or that party's legal representative

drafted such provision. The term "include" or "including" is not limiting and includes the concept of "including but not limited to". Debtors and Kamyar are sometimes individually referred to as a "party" and collectively as the "parties".

       3.6    <u>Governing Law</u>. This Agreement has been negotiated and entered into in the State of California, and is governed by, construed and enforced in accordance with the internal laws of the State of California, applied to contracts made in California by California domiciliaries to be wholly performed in California, except to the extent the laws of Pennsylvania are required with respect to the conveyance of the Unit (or the Substitute Unit) to Kamyar.

       3.7    <u>Execution in Counterparts</u>. This Agreement may be executed in two or more counterparts.

       3.8    <u>Integration</u>. This Agreement describes the entire agreement between the parties with regard to the subject matter of this Agreement. All agreements, covenants, representations and warranties, express and implied, oral and written, of the parties with regard to the subject matter of this Agreement are contained in this Agreement, in the attached Exhibits, and the documents referred to in this Agreement or implementing the provisions of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties with respect to the subject matter of this Agreement are waived, merged in this Agreement and superseded by this Agreement. This is an integrated agreement.

       3.9    <u>Successors and Assigns</u>. This Agreement is binding upon and inure to the benefit of the parties (inclusive of the LLC) and their respective heirs, representatives, successors and permissible assigns.

       3.10    <u>Third Party Beneficiaries</u>. Nothing in this Agreement is for the benefit of anyone other than a party and the LLC.

    IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date at the top of Page 1.

<u>Addresses</u>                                                    Kamyar:
P.O. Box 716
Menlo Park, California 94026


                                          Kamyar Vaghar


[signatures continue on following page]

M:\Vaghar\AgmtSettlementOfDebt.wpd                    -4-

[signatures continued from preceding page]

c/o Anmor Management and Killian Properties
901 Route 168, Suite 110
Turnersville, New Jersey 08012

Debtors:

_____
David Killian

_____
Anthony Marotta

Consent and Agreement of LLC:

The undersigned, Rosa Court, LLC, a New Jersey limited liability company (the "LLC") and referred to as the LLC in the above Agreement, agrees to timely perform all obligations of the LLC as described in the Agreement, inclusive of paragraph 1, above (entitled "Discharge of Debt") paragraph 2, above (entitled "Performance by the LLC"), the remedy of specific performance as provided in paragraph 1.4(ii), above (entitled "Right to Specific Performance"), and all obligations which Debtors have agreed to cause the LLC to perform on behalf of Debtors in favor or Kamyar.  The LLC has executed this Consent and Agreement effective on the same effective date as the Agreement.

Rosa Court, LLC

By: _____
David Killian, Managing Member

By: _____
Anthony Marotta, Managing Member

**EXHIBIT " B"**

ADDITIONAL ITEMS FOR UNIT 11

Saddlewood Cabinets in Kitchen with Intense Coffee countertop
Hardwood Floor #8344 Saddlewood
Carpet #848 Ginger
Finished basement (sheetrock, electrical, carpet) and storage area
~~Hardwood on staircase~~ N/A
All selections for second bathroom commensurate with other units

# EXHIBIT
# D

**From:** Anthony Marotta [mailto:anthony@anmarmanagement.com]
**Sent:** Thursday, October 19, 2006 12:40 PM
**To:** 'Kamyar Vaghar'
**Cc:** djkillian@comcast.net
**Subject:** RE: 12th and Jackson

Kamyar,

This is pretty straight forward… thanks.

A few minor issues…. first, we would prefer the State of Pa with regards to legal process. However, we are willing to agree to California, since we remain confident in satisfying this obligation. Second, we are NOT willing to pay for your portion of the transfer tax and Title Insurance. If Title is an issue, we can certainly have a "bring down" completed, which would show that the property is clear. If your legal counsel insists on Title Insurance, then we can assist, have the Title company that has handled this transaction get you the lowest possible rate, and you would pay for it. We would normally be responsible for the Deed, and are OK with that. Simply put, whatever the Seller would normally pay for, we will, and whatever the Buyer would normally pay for, you should.
I hope this makes it simple and we can complete this transaction….. thanks…..

Anthony Marotta
President
Anmar Management
901 RT 168 Suite 110
Turnersville NJ  08012
(856) 374-8300
(856)374-8400 fax

**From:** Kamyar Vaghar [mailto:kvaghar@kamcodeveloper.com]
**Sent:** Thursday, October 19, 2006 2:24 PM
**To:** Anthony Marotta
**Cc:** djkillian@comcast.net
**Subject:** RE: 12th and Jackson

Here is the doc. Let me know if you have any questions.

Kamyar Vaghar
P.O. Box 716
Menlo Park, CA 94026

-------- Original Message --------

10/24/2007

Subject: RE: 12th and Jackson
From: "Anthony Marotta" <anthony@anmarmanagement.com>
Date: Wed, October 18, 2006 6:15 am
To: "'Kamyar Vaghar'" <kvaghar@kamcodeveloper.com>
Cc: <djkillian@comcast.net>

Kamyar,

We will forward to you a legal description of the entire site along with one for the individual lot. The Loan amount is $4,500,000 and it is financed with Prudential Savings Bank, 19th & Oregon Ave. Philadelphia, Pa. 19145

Why??

Anthony Marotta
President
Anmar Management
901 RT 168 Suite 110
Turnersville NJ 08012
(856) 374-8300
(856)374-8400 fax

**From:** Kamyar Vaghar [mailto:kvaghar@kamcodeveloper.com]
**Sent:** Tuesday, October 17, 2006 7:14 PM
**To:** Anthony Marotta
**Cc:** djkillian@comcast.net
**Subject:** RE: 12th and Jackson

Hey guys. Got my email back up and running. In order to finalize the document, my trustee needs the following information:

1. Legal Description of the Rosa site

2. Principal amount of construction debt

3. Construction Lender and address

Other than that, the doc looks pretty clean and straight forward. Talk to you soon. I will be back in San Francisco late tonight or tomorrow.

Kamyar Vaghar
P.O. Box 716
Menlo Park, CA 94026

-------- Original Message --------
Subject: RE: 12th and Jackson
From: "Anthony Marotta" <anthony@anmarmanagement.com>
Date: Fri, October 13, 2006 10:23 am
To: "'Kamyar Vaghar'" <kvaghar@kamcodeveloper.com>

Kam,

Call me on my other cell #856-381-6767… my other cell phone is broken!!

Anthony Marotta
President
Anmar Management
901 RT 168 Suite 110
Turnersville NJ  08012
(856) 374-8300
(856)374-8400 fax

**From:** Kamyar Vaghar [mailto:kvaghar@kamcodeveloper.com]
**Sent:** Thursday, October 12, 2006 5:30 PM
**To:** djkillian@comcast.net; anthony@anmarmanagement.com
**Subject:** 12th and Jackson

Hey guys. I should have a final agreeement by Monday to send to you for review. So as far as that goes, we should be done shortly. I am getting more and more concerned over 12th and Jackson so just so I am not accusing anyone
of anything, but I want to put this information out there so there is no miscommunication later.

I am catching a lot of heat regarding 12th and Jackson on my end. Since we are coming up with a solution on Rosa, we should also have something in writing for 12th and Jackson. I have been asking for this for months now. I basically have somewhere in the neighborhood of 90k in there.

If this project is flipped, I am entitled to my portion of the profits. My money is the money funding the contract. I don't want you guys to think that you are going to carry this project with my money, find a buyer, take your profits and give me a refund. I am letting you know right now I will not allow that to happen. And since neither of you seem to no what the other is doing, it is a little disconcerning.

Keep in mind that all sales are a matter of public record and no matter what attempt can be made to show otherwise, if you flip this contract I will find out. Any such attempts come with a host of charges, including, but not limited to, fraud. My attorney wishes to file a lis pendence. I don't want to go this route but at a certain point it is out of my hands and I need protection. By October 20, we need an agreement in writing. I don't want to play games with this, nor do I want to hand this matter entirely to my lawyers.

Again, no accusations, just want to be upfront and communicate so there are no issues later.

Kamyar Vaghar
P.O. Box 716
Menlo Park, CA 94026